MAK WOOD, INC.,

              Plaintiff,

    v.                                   Case No. 2:25-cv-2011

PROBULIN LLC,
B&B AZ HOLDINGS, LLC,
E2E PHARMA, LLC,

              Defendants.

## COMPLAINT

Plaintiff MAK Wood, Inc. ("MAK Wood" or "Plaintiff"), by and through its undersigned counsel, as and for its Complaint, alleges as follows:

## PARTIES

1. MAK Wood is a corporation organized and existing under the laws of the State of Wisconsin with its principal place of business located at 1235 Dakota Drive, Suite C, Grafton, Wisconsin 53024.

2. Upon information and belief, Defendant Probulin LLC is a limited liability company organized and existing under the laws of the State of Arizona, with its principal place of business located at 3279 E. Harbour Dr., Phoenix, AZ 85034. Upon information and belief, Probulin LLC is owned, at least in part, by Defendant B&B AZ Holdings, LLC d/b/a/ Healist Naturals.

3. Upon information and belief, Defendant B&B AZ Holdings, LLC d/b/a Healist Naturals ("Healist") is a limited liability company organized and existing under the laws of the State of Arizona, with its principal place of business located at 3279 East Harbour Drive, Phoenix, Arizona 85034.

4.      Upon information and belief, Defendant e2e Pharma, LLC ("E2E"), is a limited liability company organized and existing under the laws of the State of Arizona, with its principal place of business located at 3279 East Harbour Drive, Phoenix, Arizona 85034. Upon information and belief, E2E is a turnkey product manufacturer and third-party logistics (3PL) provider for Healist.

5.      Upon information and belief, Healist is the holding company for the Probulin brand; Probulin LLC is the operating company for the Probulin brand; and E2E manufactures and provides logistics for the Probulin brand.

6.      Upon information and belief, the Defendants work together to produce, manufacture, and sell Probulin-branded products.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, and pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a) and (b).

8.      This Court has supplemental jurisdiction over Plaintiff's additional claims, pursuant to 28 U.S.C. § 1367(a) because those claims are so related to Plaintiff's federal trademark infringement and counterfeiting claims, over which this Court has original jurisdiction, that the additional claims form part of the same case or controversy under Article III of the United States Constitution.

9.      This Court has personal jurisdiction over all Defendants because, upon information and belief, Defendants have regularly conducted business in this judicial district, and certain of the acts complained of herein occurred in this judicial district.

10.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1391(c), because a substantial part of the events and injury giving rise to MAK Wood's claims have occurred and

2

continues to occur in this district, a substantial part of property that is the subject of the action is situated within this judicial district, and Plaintiff maintains its principal place of business in this judicial district.

<u>**FACTUAL ALLEGATIONS**</u>

**A.    MAK Wood's Business**

11.    MAK Wood is a technology-driven company specializing in nutraceuticals, pharmaceutical precursors, and food processing ingredients.

12.    For more than 40 years, MAK Wood has been a trusted leader in custom formulation and ingredient innovation, serving the food and nutraceutical industries.

13.    MAK Wood has built a reputation for innovation and integrity in the health and wellness space.

14.    MAK Wood specializes in creating high-quality custom blends of probiotics, prebiotics, postbiotics, and enzymes, including MAK Wood's own proprietary blend, MAKTabolite®.

15.    MAKTabolite® is a postbiotic, meaning it consists of non-viable microbial cells or their components produced during fermentation. Postbiotics provide health benefits without containing live bacteria and are generally more stable than probiotics, often supporting gut health and immune function.

16.    MAK Wood also developed MAKTrek® and MAKTrek®-3D, a delivery technology designed to protect live probiotic bacteria as they pass through the stomach so they can reach the intestines intact.

17. MAK Wood's advanced delivery systems ensure optimal effectiveness by helping key ingredients reach the colon. These delivery systems set MAK Wood apart as a scientific innovator in digestive health.

**B.    The Mak Wood Marks**

18. MAK Wood heavily invests in the innovation and the protection of its products and technology by filing corresponding patent and trademark applications.

19. Among the products MAK Wood designs and manufactures are MAK Woods' MAKTabolite®, MAKTrek® and MAKTrek®-3D.

20. To that end, MAK Wood safeguards its technologies through a broad range of intellectual property protections, including trademarks.

21. In particular, MAK Wood owns trademarks that identify its products, MAKTrek® and MAKTabolite®:

| Mark & Registration Number | Filing & Registration Date | First Use in Commerce | Goods |
|---|---|---|---|
| MAKTREK<br><br>Reg. No. 4595591 | **Filed:** July 24, 2013<br><br>**Registered:** September 2, 2014 | January, 2004 | Enzymes for use in the manufacture of nutraceuticals; Probiotic compositions for use as ingredients for food and beverages, namely, probiotic bacteria and probiotic bacterial cultures; acid stabilizers |
| MAKTABOLITE<br><br>Reg. No. 5644432 | **Filed:** May 29, 2017<br><br>**Registered:** January 1, 2019 | July 17, 2018 | Nutritional supplements; postbiotics, namely, postbiotic nutritional supplements; probiotics, namely, probiotic supplements; synbiotics, namely, synbiotic nutritional supplements; enzymes, namely, enzyme dietary supplements; antimicrobials, namely, antimicrobials for dermatologic use, intestinal use, and oral use; genomeceuticals, namely, genomeceutical nutritional supplements; nutraceuticals for use as a dietary supplement |

4

22.     Attached as **Exhibit A** are true and correct printouts from the USPTO website reflecting the current status of these registrations. In this Complaint, the above-listed federally registered marks are collectively referred to as the "MAK Wood Marks."

23.     These registrations were issued prior to Defendants' use of the MAK Wood Marks in commerce.

24.     The registrations for the MAK Wood Marks remain valid, subsisting, and in full force and effect on the USPTO Principal Register.

25.     The MAK Wood Marks are valid subsisting, and incontestable under 15 U.S.C. § 1065, which constitutes conclusive evidence of the validity of the marks, MAK Wood's ownership of the marks, and MAK Wood's exclusive right to use the registered marks in connection with the goods and services identified in the registrations pursuant to 15 U.S.C. § 1115(b).

26.     Since at least 2004, MAK Wood has developed a portfolio of technologies, including probiotic technologies, designed to enhance nutrient absorption, digestion, and metabolic performance.

27.     Each proprietary blend is marketed under a distinct trademark that serves as both a source identifier and a symbol of quality and scientific innovation within the nutraceutical industry and public.

28.     The MAK Wood Marks are prominently displayed on marketing materials, including MAK Wood's website (www.makwood.com), technical documentation distributed to contract manufacturers, formulators, and brand owners, as well as product labels.

29.     Through substantial investment in research and development, marketing, and rigorous quality control, the MAK Wood Marks have come to signify enzyme blends widely

recognized and relied upon within the industry for their performance characteristics and formulation versatility.

30.     As a result, the MAK Wood Marks have acquired significant goodwill, indicating that the products bearing the MAK Wood Marks originate exclusively from MAK Wood.

31.     The MAK Wood Marks are distinctive and closely associated with MAK Wood and its goods and services.

32.     MAK Wood's continued use and protection of the MAK Wood Marks are essential to preserving its reputation for innovation, quality, and technical leadership in nutraceutical manufacturing.

**C.     MAK Wood Protects Its Confidential, Proprietary, and Trade Secret Information**

33.     MAK Wood has developed its proprietary formulations and blends through substantial investments of time, resources, and specialized expertise.

34.     These formulations comprise of specific combinations, concentrations, and production methods designed to optimize bioavailability, stability, and performance in nutraceutical applications.

35.     MAK Wood's proprietary blends, as well as their underlying formulation data, specifications, ratios, and manufacturing protocols, constitute confidential and proprietary information that derives independent economic value from not being generally known to, and not readily ascertainable by, others who could obtain economic value from their disclosure or use.

36.     MAK Wood maintains policies governing the use and dissemination of its confidential information and has taken, and continues to take, reasonable measures to maintain the secrecy and confidentiality of its proprietary blends. These measures include, but are not limited to, the use of non-disclosure agreements, confidentiality provisions in employee and vendor

6

contracts, restricted access to formulation data, and secure storage of proprietary technical documentation.

37.     Overall, know-how and expertise related to MAK Wood's proprietary blends are confined to a minimal number of personnel.

38.     Indeed, access to MAK Wood's proprietary blends is highly restricted and not available company-wide. It is limited to a small group of individuals, such as the Director of Operations, designated support staff, and MAK Wood's research and development personnel.

39.     These trade secrets provide MAK Wood with a significant competitive advantage, as no other nutraceutical manufacturer possesses identical formulations or delivery mechanisms.

**D.     The Probulin Brand Relies On MAK Wood's Technology**

40.     Upon information and belief, in 2013, Jason Mitchell ("Mitchell"), a naturopathic doctor, founded Probulin Prebiotics, LLC, starting the Probulin brand.

41.     Upon information and belief, Probulin is a brand that produces a line of dietary supplements, primarily focused on probiotics.

42.     Upon information and belief, Mitchell collaborated with Dr. Shekhar Challa, via his entity Challa Enterprises, LLC ("Challa"), to formulate and design the Probulin-branded products.

43.     MAK Wood played a pivotal role in the development and formulation of Probulin-branded products.

44.     In 2013, MAK Wood agreed to collaborate with Mitchell and Dr. Challa on creating Probulin-branded products.

45.     Central to these products was MAK Wood's innovative technology, including the MAKTrek® delivery system.

7

46.     Consequently, Probulin Probiotics, LLC and Challa agreed to purchase MAK Wood's products and license the MAKTrek® mark.

47.     On July 5, 2019, Challa formalized the parties' relationship and entered the "Patent and Know-How License Agreement", dated July 5, 2019 (the "Agreement"). A true and correct copy of the Agreement is attached hereto as **Exhibit B**.

48.     Pursuant to the Agreement, MAK Wood granted Challa the exclusive license to use the licensed technology, which included "all know-how, trade secrets, patented and unpatented inventions, research and development, materials, and technical data known or used by [MAK Wood] in connection to the delivery of bacteria or other organisms to the gastrointestinal system," which was identified by the parties as Mak Wood's MAKTrek® technology. (Ex. B, at 1.)

49.     MAK Wood also provided Challa a non-exclusive license to use the Mak Wood Marks "solely in connection with the manufacture, advertising, promotion, sale, offering for sale, and distribution of" the MAKTrek® products. (Ex. B, at 2.)

50.     In consideration, Challa agreed, among other things, to "ensure" that the MAKTrek® use was of "a high standard and quality so as to reflect favorably" upon both Probulin and MAK Wood, and the goodwill associated with the MAK Wood Marks. (Ex. B, at 2.)

51.     Challa also agreed to "not disclose any unpublished [technology] furnished by [MAK Wood]" except with the prior written consent of MAK Wood, or after it has become public through no fault of Challa. (Ex. B, at 3.)

52.     Challa thereafter assigned the Agreement to Probulin Probiotics, LLC.

53.     MAK Wood worked closely with Mitchell to grow the Probulin brand.

54.     Indeed, following the parties' Agreement, the Probulin brand expanded, growing its product line from five products in 2018 to now a total of twenty-three (23) products.

55.     Many of these products feature the MAK Wood Marks in commerce.

56.     The Probulin-branded products tout the MAK Wood technology as a differentiator from other probiotic products.

57.     Despite its expansion, upon information and belief, the Probulin brand began to experience financial difficulty and began falling behind on its payments to MAK Wood.

58.     Upon information and belief, on or about November 23, 2022, Kadenwood, LLC ("Kadenwood") acquired the Probulin brand from Probulin Probiotics, LLC.

59.     On or about November 29, 2022, Probulin Probiotics, LLC assigned the Agreement to Kadenwood.

60.     Upon information and belief, Kadenwood also began to experience financial difficulty.

61.     Upon information belief, Defendant Healist subsequently acquired the Probulin brand from Kadenwood.

62.     Despite acquiring the Probulin brand, Healist refused to honor the Agreement or accept an assignment of the same.

63.     On July 10, 2024, MAK Wood notified Healist that the Agreement was terminated, and that Healist had no right to use any of the MAK Wood Marks.

**E.     MAK Wood and Probulin's Post-Termination Purchase-Order Relationship**

64.     Following termination of the Agreement, MAK Wood notified Healist that if it wished to purchase the MAKTrek® and MAKTabolite® products from MAK Wood, their continued purchase would be through individual purchase orders that would then be subject to MAK Wood's Terms and Conditions.

9

65.    Healist began purchasing MAKTrek® and MAKTabolite® from MAK Wood for the Probulin product lines via purchase order.

66.    Upon information and belief, Healist was purchasing product from MAK Wood on behalf of Defendant Probulin LLC.

67.    Upon receipt of a purchase order, MAK Wood sent an order confirmation, incorporating its Terms and Conditions.

68.    Thus, each order entered by Healist was subject to MAK Wood's Terms and Conditions (the "Terms"). A true and correct copy of the Terms are attached hereto as **Exhibit C.**

69.    Under the Terms, MAK Wood granted Healist a license to use its trademarks and strain numbers, but only in a limited way. Indeed, the Terms allowed Healist to show the MAK Wood Marks on product labels, its website, and marketing materials for the specific products it bought under the purchase order, but the license was not extended for any other use.

70.    Pursuant to the Terms, Healist acknowledged that the MAK Wood Marks represent high quality and a strong reputation. Healist also agreed to conduct business and use the MAK Wood Marks in a manner at least consistent with such quality standards and reputation. (Ex. C.)

71.    Likewise, Healist agreed that any use of the MAK Wood Marks must meet MAK Wood's quality standards. (Ex. C.)

72.    Pursuant to the Terms, Healist also agreed that it would not take any action that may interfere with any of MAK Wood's rights in or to MAK Wood's Intellectual Property Rights, which is defined to include but is not limited to the MAK Wood Marks and MAK Wood's confidential and proprietary technology. (Ex. C.)

73.     Under the Terms, Healist was prohibited from engaging in actions that tend to disparage, dilute the value of, or reflect negatively on the products of MAK Wood or any goods purchased through the purchase orders, or any of MAK Wood's trademarks. (Ex. C.)

74.     The Terms also state that any modification, alteration, adaptation, de-compilation, disassembling, reverse engineering, reverse assembling, or otherwise attempting to discover or design around any part of MAK Wood's Intellectual Property Rights as defined by the Terms is strictly forbidden. (Ex. C.)

75.     Healist also agreed to abide by the Terms' confidentiality provision.

76.     The confidentiality provision defines "Confidential Information" to include "information and materials . . . possessed by or developed for [MAK Wood] and which relates to [MAK Wood]'s existing or potential business, which information and materials are not reasonably ascertainable by [MAK Wood]'s competitors or by the general public through lawful means, and which information and materials [MAK Wood] treats as confidential." (Ex. C.)

77.     The confidentiality provision states that MAK Wood's confidential information includes, but is not limited to, trade secrets, formulas, formulations, ingredients, materials, and specifications. (Ex. C.)

78.     The confidentiality provision also provides: "[f]or the avoidance of doubt, [MAK Wood]'s ingredient lists and composition sheets or documents shall be considered and constitute the Confidential Information and trade secrets of Seller." (Ex. C.)

79.     Under the confidentiality provision, Healist agreed that it would not use, or permit to be accessed for use, MAK Wood's confidential information for any purpose other than to exercise its rights or perform its obligations under the purchase order.

11

80.     Likewise, Healist agreed that it would not disclose of divulge any of MAK Wood's confidential information to any person or entity. (Ex. C.)

81.     Additionally, under the Terms, trade secrets acquired through the purchase of MAK Wood's products must remain confidential in perpetuity, or, at least and until, such confidential information loses its trade secret protection other than due to an act or omission of the purchaser. (Ex. C.)

82.     Healist continued to purchase MAK Wood products for Probulin LLC under this arrangement through 2024 and early 2025.

83.     Notably, the volume of products that Healist purchased in 2024 and 2025 from MAK Wood substantially decreased.

84.     Upon information and belief, E2E also would purchase orders on behalf of Healist and Probulin LLC from MAK Wood.

85.     As a result, through each purchase order, Probulin LLC, Healist, and E2E, agreed to MAK Wood's Terms.

**F.      Healist and Probulin Search for Less Costly Vendors.**

86.     By early 2024, Healist continued to purchase MAK Wood's products, including MAKTrek® and MAKTabolite®, which was to be added to the Probulin product lines.

87.     Upon information and belief, Healist desired to reduce cost to manufacture the Probulin product lines in an effort to increase its revenues associated with the Probulin product line.

88.     Indeed, Healist informed MAK Wood that it was shopping the MAKTrek® and MAKTabolite® brands for quotes, and that if MAK Wood could not reduce the price of its products, Healist would go elsewhere for its products.

89.     MAK Wood did not agree to reduce the price of its MAKTrek® and MAKTabolite® products.

90.     In light of this, upon information and belief, Healist began to seek out competitors to produce products akin to the MAKTrek® and MAKTabolite® brands at a reduced price.

## G.     Reverse Engineering and Misappropriation

91.     Throughout the relationship, MAK Wood shared limited proprietary information solely for regulatory and compliance purposes with Defendants and their predecessors, including ingredient carriers, trace ingredient constituents, and specifications requested by health authorities.

92.     Notably, any proprietary information shared with Defendants and their predecessors was to be governed by the Agreement or the Terms.

93.     Upon information and belief, through the sharing of information related to what MAK Wood believed was for regulatory compliance, and through close workings with Mitchell to facilitate the Probulin brand's growth, Defendants became aware of certain proprietary and confidential business information, including, but not limited to, the proprietary blends and ingredient weights of MAKTrek® and MAKTabolite®.

94.     Upon information and belief, Defendants used this information—supplied under confidentiality and subject to the Terms—to reverse engineer and/or commission third parties to replicate MAK Wood's proprietary formulations.

95.     Upon information and belief, Defendants were successful in shopping the protected MAKTrek® and MAKTabolite® brands and received quotes lower than MAK Wood's pricing.

13

96.     E2E, on behalf of Healist and Probulin LLC, placed its final orders for MAKTabolite® and MAKTrek®, including ancillary proprietary ingredients and enzyme strains for each product, on April 7, 2025.

97.     Since April 7, 2025, no Defendant has purchased MAK Wood products, despite continuing to sell products bearing the MAK Wood Marks.

98.     Upon information and belief, Defendants do not possess enough quantities of MAK Wood products to sustain production of their own products, confirming that subsequent goods could not contain authentic MAKTrek® or MAKTabolite® technology, despite what Defendants' are advertising to consumers.

## H.      MAK Wood Learns Defendants are Infringing

99.     In May 2025, MAK Wood began purchasing several Probulin-branded products being advertised with the MAK Wood Marks to determine whether they contained MAK Wood's MAKTabolite®, MAKTrek®, and MAKTrek® 3D, and other proprietary ingredients.

100.    An example of a Probulin product that MAK Woods purchased is below:



101. MAK Wood sent samples of its MAKTrek®, MAKTrek® 3D, and MAKTabolite® products and undisclosed samples of the Probulin products affixing the MAKTrek® and MAKTabolite® tradenames to their packages.

102. The independent testing facility confirmed MAK Wood's suspicions.

103. Indeed, the testing revealed additional bacterial strains present in Defendants' knock-off probiotic blend that are not included in MAK Wood's colon probiotic blend.

104. Upon information and belief, Defendants attempted to, or attempted to have, the MAK Wood's proprietary blends reverse engineered but was unsuccessful in creating a one-to-one copy.

105. Additionally, upon information and belief, the presence of MAK Wood's proprietary bacterial strains in the Probulin-branded products—without conforming to MAK Wood's internal specifications—demonstrates that Defendants attempted, or caused others to attempt, to reverse engineer those proprietary strains.

106. By way of example, independent testing confirmed that the Probulin Colon Probiotic blend contained the bacterial strain *Bifidobacterium infantis* (GCA_004919065.2), which is authorized solely for research and development purposes and has not been approved by the FDA for consumer use.

107. The inclusion of this unapproved strain—combined with the use of the MAK Wood Marks on the Probulin packaging—constitutes further evidence of irreparable reputational harm to MAK Wood.

108. By incorporating non-FDA-approved strains into products bearing the MAKTrek® and MAKTabolite® marks, Defendants falsely imply that MAK Wood, a long-standing and FDA-compliant manufacturer, endorses or supplies these non-compliant ingredients.

15

109. This conduct not only infringes the MAK Wood Marks but also erodes the goodwill and reputation for safety, reliability, and regulatory integrity that those marks represent.

110. Additionally, independent testing revealed that the Probulin Total Care probiotic blend contained bacterial strains that are not present in MAK Wood's Total Care probiotic formulation.

111. Upon information and belief, the presence of these additional strains coincides with disclosures MAK Wood provided to Defendants during regulatory approval processes. Specifically, MAK Wood disclosed ingredient weight information to facilitate regulatory approval for the Probulin products.

112. During these exchanges, MAK Wood identified the existence of "trace" ingredients in its proprietary formulations. These disclosures informed Defendants of bacterial strains that were otherwise undetectable through standard analysis.

113. The "trace" ingredients MAK Wood disclosed for its Colon probiotic blend—undetectable through conventional testing—correspond to the additional strains identified in the test results of the Probulin-branded products.

114. Upon information and belief, Defendants attempted, or caused others to attempt, to reverse engineer MAK Wood's proprietary blends but failed to create an exact replication.

115. Furthermore, the presence of MAK Wood's proprietary bacterial strains in Probulin-branded products—without conforming to MAK Wood's internal specifications—indicates that Defendants engaged in, or directed, reverse-engineering efforts targeting MAK Wood's proprietary strains.

116.     Testing also revealed disparities in the relative abundance of certain bacterial strains between MAK Wood's Women's probiotic blend and the Probulin Women's probiotic blend.

117.     Upon information and belief, these disparities further demonstrate that Defendants attempted, or caused others to attempt, to reverse engineer MAK Wood's proprietary blends but failed to produce an identical copy.

118.     The presence of MAK Wood's proprietary strains in non-conforming ratios reinforces that Defendants engaged in reverse-engineering efforts.

119.     In short, independent testing confirms that the Probulin-branded products contain bacterial strains and ratios inconsistent with MAK Wood's authentic formulations, proving that Defendants did not use genuine MAK Wood blends.

120.     Nevertheless, Defendants continued to display the MAKTrek® and MAKTabolite® Marks and advertise their products as incorporating MAK Wood's proprietary delivery technology.

121.     These discrepancies between MAK Wood's control samples and the Probulin commercial samples demonstrate that Defendants attempted—but failed—to replicate MAK Wood's proprietary technologies, while continuing to mislead consumers and the trade into believing Defendants' products are authentic.

I.     **MAK Wood Provides Notice of the Dispute Pursuant to the Terms**

122.     The Terms provide that, in the event of any dispute or controversy between the Parties arising out of or relating to the Terms, the Parties shall make a good-faith effort to resolve the dispute through negotiation. Either Party may initiate negotiations by delivering written notice to the other Party identifying the nature of the dispute.

17

123. Under the Terms, the recipient of such notice must respond in writing within ten (10) calendar days with a statement of its position on and recommended solution to the dispute.

124. If the dispute is not resolved through this exchange of correspondence, the Terms require that representatives of each Party meet at a mutually agreed time and place within thirty (30) calendar days of the initial notice to share relevant information and perspectives and attempt to resolve the dispute.

125. On or about December 2, 2025, MAK Wood provided Defendants with written notice of the dispute (the "Notice"). Attached as **Exhibit D** is a true and correct copy of the Notice.

126. Defendants received this Notice on December 8, 2025.

127. Defendants did not respond to the Notice with a statement of their position or a proposed resolution to the dispute, as required under the Terms.

128. Instead, upon information and belief, Defendants attempted to revise their website to remove reference to the MAK Wood Marks.

129. However, Defendants continue to display the MAKTrek® and MAKTabolite® Marks and advertise their products as incorporating MAK Wood's proprietary delivery technology.

130. Indeed, as of the date of this Complaint, Defendants continue to display the MAK Wood Marks on Amazon:



131.    And, as of the date of this Complaint, Defendants continue to claim MAK Wood's proprietary formulations in their products on Amazon:



## FIRST CAUSE OF ACTION
### (Trademark Counterfeiting and Infringement – 15 U.S.C. § 1114)

132.    MAK Wood restates and incorporates the allegations set forth in the above paragraphs as if fully set forth herein.

133.    The MAK Wood Marks and the goodwill of the business associated with them in the United States and throughout the world are of great and incalculable value, are highly distinctive, and have become universally associated in the minds of the purchasers of the very highest quality and reputation.

134.    Defendants have manufactured, distributed, offered for sale, advertised, and/or marketed the Probulin products to the consuming public using a counterfeit product under the MAK Wood Marks, in or affecting interstate commerce.

135.    Defendants' products bear a mark that is identical and/or substantially indistinguishable in appearance from the MAK Wood Marks.

136.    Defendants acted without MAK Wood's authorization or consent, and with knowledge of MAK Wood's well-known and prior rights in the registered MAK Wood Marks.

137.    Defendants made a conscious choice to copy the MAK Wood Marks and develop their infringing products, rather than obtaining alternative, non-infringing products.

138.    By their sales and use of copies or confusingly similar versions of the MAK Wood Marks in conjunction with selling and advertising Defendants' products, Defendants are likely to cause, and are causing, confusion, mistake, and deception among the general purchasing public as to the origin of Defendants' goods, and are likely to deceive the public into believing the goods being promoted and sold by Defendants bearing the MAK Wood Marks originate from, are associated with, or are otherwise authorized by MAK Wood, all to the damage and detriment of MAK Wood's reputation, goodwill, and sales.

20

139.     MAK Wood has been and will continue to be harmed by Defendants' wrongful conduct.

140.     In light of MAK Wood's significant and longstanding investment in developing its products, reputation for quality, the goodwill created by that investment, and the customer relationships undermined by Defendants' aforesaid acts, Defendants have irreparably harmed MAK Wood in ways not readily compensated by monetary damages, and will continue to irreparably harm MAK Wood in this manner unless enjoined by the Court, as a result of which MAK Wood is without adequate remedy at law.

141.     As the direct and proximate result of Defendants' deliberate and intentional infringement, Defendants have been unjustly enriched while MAK Wood continues to suffer injury in an amount not yet ascertained, including future damages from lost sales of replacement parts and equipment repair services.

142.     MAK Wood is entitled to treble damages, attorneys' fees, and/or statutory damages for Defendants' use of counterfeit marks pursuant to 15 U.S.C. §§ 1117(a), (b), and (c).

143.     For MAK Wood to recover such damages, Defendants need not know that the marks being used are federally registered trademarks.

144.     MAK Wood also is entitled to injunctive relief, as detailed in 15 U.S.C. § 1116, including seizure of goods bearing counterfeit marks under § 1116(d), and destruction of the infringing articles pursuant to 15 U.S.C. § 1118.

### SECOND CAUSE OF ACTION
**(Trademark Infringement under 15 U.S.C. §§ 1051 *et seq.*,
and Common Law Trademark Infringement)**

145.     MAK Wood restates and incorporates the allegations set forth in the above paragraphs as if fully set forth herein.

146. Defendants' unauthorized use of the MAK Wood Marks in commerce on non-genuine products is likely to cause confusion, mistake, or deception as to the source, origin, affiliation, connection, or association of the Probulin products with MAK Wood, or as to the approval of the Probulin products by MAK Wood, and thus constitutes infringement of the MAKTrek® and MAKTabolite® marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

147. Defendants' infringing use of the MAKTrek® and MAKTabolite® marks in connection with non-genuine MAK Wood developed probiotic blends has taken place with full knowledge of MAK Wood and its strong rights in the MAK Wood Marks and, therefore, has been intentional, deliberate, and willful.

148. Additionally, Defendants' infringing products contain enzyme strains not approved by the FDA for commercial use but approved only for research and design purposes. The marketing and sale of these unapproved strains under the MAKTrek® and MAKTabolite® marks create a false impression that MAK Wood's technologies are unsafe or unregulated, thereby tarnishing the MAK Wood Marks' reputation for quality, safety, and scientific integrity.

149. Such unlawful use directly injures the goodwill and consumer trust that MAK Wood has developed over decades, causing irreparable harm that monetary damages alone cannot remedy.

150. MAK Wood has no adequate remedy at law. Defendants' actions complained of in this Complaint have directly and proximately caused and will continue to cause MAK Wood damage and injury and have unjustly enriched Defendants. Unless enjoined by this Court, Defendants will continue to do the acts complained of in this Complaint and cause damage and injury, all to MAK Wood's irreparable harm and to Defendants' unjust enrichment.

151.    Defendants' use of the MAK Wood Marks has caused and will continue to cause damage to MAK Wood in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
**(False Designation of Origin/Unfair Competition under 15 U.S.C. § 1125(a))**

152.    MAK Wood restates and incorporates the allegations set forth in the above paragraphs as if fully set forth herein.

153.    Defendants' marketing of probiotic products using the MAKTrek® and MAKTabolite® marks falsely represents that such goods originate from, are sponsored by, or are affiliated with MAK Wood.

154.    These misrepresentations have deceived, or are likely to deceive, consumers and trade partners, constituting false designation of origin and unfair competition under § 43(a) of the Lanham Act.

155.    Defendants further misrepresent the nature, characteristics, and safety of their products by distributing probiotics that contain non-FDA-approved enzyme strains intended solely for research purposes, while falsely representing to consumers that such products are genuine MAK Wood formulations meeting FDA standards for dietary supplements.

156.    This conduct deceives consumers and the trade into believing that MAK Wood manufactures or endorses products that fail to comply with U.S. regulatory requirements thereby diminishing consumer confidence in the MAKTrek® and MAKTabolite® marks and damaging MAK Wood's goodwill.

157.    MAK Wood has no adequate remedy at law. Defendants' actions complained of in this Complaint have directly and proximately caused and will continue to cause MAK Wood damage and injury and have unjustly enriched Defendants. Unless enjoined by this Court,

Defendants will continue to do the acts complained of in this Complaint and cause damage and injury, all to MAK Wood's irreparable harm and to Defendants' unjust enrichment.

158. Defendants' use of the MAK Wood Marks has caused and will continue to cause damage to MAK Wood in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**(False Advertising)**

159. MAK Wood restates and incorporates the allegations set forth in the above paragraphs as if fully set forth herein.

160. Defendants' labeling and promotional materials falsely state that their products include or utilize MAK Wood's MAKTrek® and MAKTabolite® technologies.

161. These false statements are material, were made in interstate commerce, and are likely to influence purchasing decisions by trading on the goodwill of MAK Wood.

162. MAK Wood has suffered damage to its reputation, loss of sales, and dilution of goodwill as a direct and proximate result.

163. MAK Wood has no adequate remedy at law. Defendants' actions complained of in this Complaint have directly and proximately caused and will continue to cause MAK Wood damage and injury and have unjustly enriched Defendants. Unless enjoined by this Court, Defendants will continue to do the acts complained of in this Complaint and cause damage and injury, all to MAK Wood's irreparable harm and to Defendants' unjust enrichment.

164. Defendants' use of the MAK Wood Marks has caused and will continue to cause damage to MAK Wood in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**(Breach of Contract)**

165. MAK Wood restates and incorporates the allegations set forth in the above paragraphs as if fully set forth herein.

24

166. E2E and Healist purchased products from MAK Wood.

167. Upon information and belief, those purchases were made on behalf of Defendant Probulin LLC.

168. Mak Wood's Terms governed these purchases made by Defendants.

169. The Terms constitute a valid and enforceable contract.

170. MAK Wood has satisfied all conditions precedent to bringing this action, including compliance with the dispute resolution procedures set forth in the Terms.

171. Upon information and belief, Defendants breached the Terms by, among other things:

- Disclosing confidential information,

- Continuing use of the MAK Wood Marks without purchase of genuine MAK Wood product,

- Reverse engineering, or attempting to reverse engineer, MAK Wood's proprietary formulas;

- Failing to maintain product quality and compliance by introducing enzyme strains not authorized for commercial use.

159. Upon information and belief, Defendants also breached their duty of good faith and fair dealing by, among other things, falsely claiming that they required product information for regulatory compliance, while instead using that information to develop and market a knock-off product.

160. As a result of Defendants' breaches, MAK Wood has suffered damages in an amount to be determined at trial.

161. Pursuant to the Terms, MAK Wood is entitled to its attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**(Violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 186 *et seq.*)**
**(Against All Defendants)**

162.    MAK Wood restates and incorporates the allegations set forth in the above paragraphs as if fully set forth herein.

163.    MAK Wood owns numerous trade secrets within the meaning of 18 U.S.C. § 1839(3), including but not limited to: (a) proprietary formulas, compositions, ratios, and specifications for the MAKTrek® and MAKTabolite® technologies; (b) unique combinations of probiotic, prebiotic, postbiotic, and enzyme ingredients developed through years of research; and (c) confidential ingredient lists, proprietary strain data, and related technical documentation and know-how.

164.    These trade secrets derive independent economic value from not being generally known to or readily ascertainable by competitors, and they confer a substantial competitive advantage in the nutraceutical marketplace.

165.    MAK Wood took reasonable and extensive measures to maintain the secrecy of its trade secrets, including: (a) requiring confidentiality and non-disclosure agreements form all partners and employees; (b) limiting access to trade-secret information to select personnel on a need-to-know basis; (c) employing secure electronic data systems and restricted laboratory access; and  (d) including robust confidentiality and trade-secret protection clauses in the Agreement and Terms.

166.    Defendants, without authorization, knowingly acquired, disclosed, and used MAK Wood's trade secrets by improper means.

167.    Specifically, upon information and belief, Defendants: (a) requested confidential technical data under the guise of regulatory compliance and then misused that data; (b) shared

26

MAK Wood's proprietary ingredient lists and formulation data with unauthorized third parties; (c) directed or commissioned the reverse engineering of MAK Wood's MAKTrek® and MAKTabolite® technologies to create imitation products; and (d) continued to produce and sell probiotic products falsely labeled as containing those technologies after termination of the Agreement and outside of the Terms.

168.    Defendants' actions constitute misappropriation of trade secrets under 18 U.S.C. § 1839(5) because they involved the acquisition and use of trade-secret information with actual or constructive knowledge that the information was obtained through improper means and in breach of the duties owed to MAK Wood.

169.    Upon information and belief, Defendants' appropriation was willful, malicious, and conducted in conscious disregard of MAK Wood's rights.

170.    As a direct and proximate result of Defendants' misappropriation, MAK Wood has suffered and continues to suffer substantial damages, including loss of market share, loss of goodwill, erosion of competitive advantage, and unjust enrichment by Defendants.

171.    The resulting imitation products not only incorporate MAK Wood's confidential formulation data but also contain enzyme strains not approved by the FDA for commercial distribution. By embedding such non-compliant ingredients within products marketed under the MAKTrek® and MAKTabolite® names, Defendants have jeopardized MAK Wood's hard-earned regulatory reputation and the trust of its partners, constituting an aggravating factor of willfulness and reckless disregard under the DTSA.

172.    Pursuant to 18 U.S.C. § 1836(b)(3), MAK Wood is entitled to injunctive relief to prevent further actual or threatened misappropriation, compensatory damages, exemplary damages up to twice the amount of actual loss, and reasonable attorneys' fees and costs.

173.    Defendants' conduct constitutes an exceptional case of willful and malicious misappropriation warranting the maximum statutory relief available under the DTSA.

## SIXTH CAUSE OF ACTION
### (Violations of the Wisconsin Uniform Trade Secrets Act, Wis. Stat. § 134.90)

174.    MAK Wood restates and incorporates the allegations set forth in the above paragraphs as if fully set forth herein.

175.    The confidential formulas, ingredient specifications, and technical data for MAKTrek® and MAKTabolite® constitute trade secrets as defined in Wis. Stat. § 134.90(1)(c), in that these trade secrets derive independent economic value from not being generally known to or readily ascertainable by competitors, and they confer a substantial competitive advantage in the nutraceutical marketplace.

176.    MAK Wood took reasonable and extensive measures to maintain the secrecy of its trade secrets, including: (a) requiring confidentiality and non-disclosure agreements form all partners and employees; (b) limiting access to trade-secret information to select personnel on a need-to-know basis; (c) employing secure electronic data systems and restricted laboratory access; and  (d) including robust confidentiality and trade-secret protection clauses in the Agreement and Terms and Conditions.

177.    Defendants, without authorization, knowingly acquired, disclosed, and used MAK Wood's trade secrets by improper means.

178.    Specifically, upon information and belief, Defendants: (a) requested confidential technical data under the guise of regulatory compliance and then misused that data; (b) shared MAK Wood's proprietary ingredient lists and formulation data with unauthorized third parties; (c) directed or commissioned the reverse engineering of MAK Wood's MAKTrek® and

28

MAKTabolite® technologies to create imitation products; and (d) continued to produce and sell probiotic products falsely labeled as containing those technologies.

179.     Upon information and belief, Defendants' appropriation was willful, malicious, and conducted in conscious disregard of MAK Wood's rights.

180.     As a direct and proximate result of Defendants' misappropriation, MAK Wood has suffered and continues to suffer substantial damages, including loss of market share, loss of goodwill, erosion of competitive advantage, and unjust enrichment by Defendants.

181.     The resulting imitation products not only incorporate MAK Wood's confidential formulation data but also contain enzyme strains not approved by the FDA for commercial distribution. By embedding such non-compliant ingredients within products marketed under the MAKTrek® and MAKTabolite® names, Defendants have jeopardized MAK Wood's hard-earned regulatory reputation and the trust of its partners, constituting an aggravating factor of willfulness and reckless disregard.

182.     Pursuant to Wis. Stat. § 134.90(3), MAK Wood is entitled to injunctive relief to prevent further actual or threatened misappropriation, compensatory damages, exemplary damages up to twice the amount of actual loss, and an award of attorneys' fees and costs.

## SIXTH CAUSE OF ACTION
### (Common Law Unfair Competition)

183.     MAK Wood restates and incorporates the allegations set forth in the above paragraphs as if fully set forth herein.

184.     Defendants' conduct, including their unauthorized use of MAK Wood's trademarks, trade names, and proprietary technologies, and their misrepresentations regarding the source, quality, authenticity, and safety of their products constitutes unfair competition under Wisconsin common law.

185.    Defendants' unfair competition was willful and in bad faith, intended to exploit MAK Wood's goodwill and reputation and to mislead consumers into purchasing Defendants' inferior imitation products.

186.    As a result, MAK Wood has suffered loss of goodwill, dilution of brand reputation, and other irreparable harm for which there is no adequate remedy at law.

187.    By marketing products containing unapproved, research-only enzyme strains under the MAKTrek® and MAKTabolite® marks, Defendants have deceived consumers into believing MAK Wood endorses or manufactures these non-compliant goods, thereby inflicting severe harm to MAK Wood's brand integrity and standing within the nutraceutical industry. Defendants' acts of unfair competition not only diverted MAK Wood's customers but also exposed it to reputational risk, regulatory scrutiny, and erosion of consumer trust.

188.    MAK Wood is entitled to damages, disgorgement of profits, and injunctive relief restraining Defendants from continuing their acts of unfair competition.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff MAK Wood respectfully requests that this Court enter judgment in its favor and against Defendants, jointly and severally, and grant the following relief:

A.    A preliminary and/or permanent injunction enjoining Defendants and all persons acting in concert with them from:

    i.    Using the MAK Wood Marks, or any confusingly similar designations;

    ii.    Advertising or selling any goods falsely representing an association with MAK Wood;

    iii.    Using, disclosing, or benefitting from MAK Wood's confidential or trade secret information; and

    iv.       Reverse engineering or replicating any MAKTrek® or MAKTabolite® technology.

B.    Ordering Defendants to recall, deliver up, or destroy all infringing goods, packaging, promotional materials, and related items in their possession or control.

C.    Ordering that Defendants issue corrective advertising or public statement clarifying that their probiotic products containing non-FDA-approved enzyme strains were not developed, approved, or manufactured by MAK Wood and that MAK Wood does not authorize or endorse such products.

D.    Awarding damages with respect to the following:

    i.       Actual damages, lost profits, and disgorgement of Defendants' profits under 15 U.S.C. § 1117(a);

    ii.      Statutory damages under 15 U.S.C. § 1117(c);

    iii.    Treble damages under 15 U.S.C. § 1117(b) for counterfeiting and willful trademark infringement;

    iv.     Double damages under 18 U.S.C. § 1836(b)(3)(C) and Wis. Stat. § 134.90(3)(b) for willful trade secret misappropriation; and

    v.      Compensatory and consequential damages for breach of contract, unfair competition, and false advertising;

E.    Awarding reasonable attorneys' fees, expert fees, and costs as permitted by law, including but not limited to, under 15 U.S.C. § 1117(a), 18 U.S.C. § 1836(b)(3)(D), Wis. Stat. § 134.90(4)(b), and under the Terms;

F.    Prejudgment and post-judgment interest at the maximum rate permitted by law;

G.    Such other and further relief as the Court deems just and proper.

31

Dated: December 22, 2025

**MICHAEL BEST & FRIEDRICH LLP**

By:   */s/ John C. Scheller*
      John C. Scheller, SBN 1031247
      Tanya M. Salman, SBN 1089151
      One South Pinckney Street, Suite 700
      Madison, WI 53703
      Phone: 608.257.3501
      Fax: 608.283.2275
      jcscheller@michaelbest.com
      tmsalman@michaelbest.com

      Lee M. Seese, SBN 1036636
      Austin A. Wesner, SBN 1122134
      790 North Water Street, Suite 2500
      Milwaukee, WI 53202
      Phone: 414.271.6560
      Fax: 414.277.0656
      lmseese@michaelbest.com
      Austin.Wesner@michalbest.com

      *Attorneys for Plaintiff MAK Wood, Inc.*